UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NORA HARDING,

      Plaintiff,

      v.

TRANSFORCE, INC., et al.,

      Defendants.

Case No. 2:11-cv-244
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Norah McCann King

## OPINION AND ORDER

Plaintiff Nora Harding filed this action individually and as administrator of the estate of

her husband, Mark A. Harding, who was an employee of Defendant Transforce, Inc. when he was

killed on February 12, 2009, in a tragic accident that occurred during the scope of his

employment. This matter is presently before the Court on Defendant NYK Logistics (Americas),

Inc.'s ("NYK") Motion for Summary Judgment (Doc. No. 42) and Plaintiff Nora Harding's

Motion for Partial Summary Judgment (Doc. No. 53). For the reasons that follow, the Court

**DENIES** both motions.

### I.

In February 2006, Mr. Harding began working for Defendant Transforce, Inc., which is a

temporary staffing solutions company that was established in 1998. Mr. Harding was assigned to

work for a variety of Transforce customers for three years.

Transforce and Defendant NYK entered into a contractual relationship in August 2007,

for Transforce to provide personnel to NYK for the "operation of transportation or other

equipment." (Service Agreement at 1; Doc. No. 52-2.) In relevant part, the contract provided

that Transforce personnel were "employees of [Transforce] during the term of th[e] Agreement

and [Transforce] and [NYK] w[ould] at all times be independent contractors." *Id.* Transforce
agreed to provide to NYK qualified personnel hired consistent with the Federal Motor Carrier
Safety Regulations, to perform substance abuse testing, to comply with "all applicable worker's
compensation laws," the Consolidated Budget Reconciliation Act and the Fair Labor Standards
Act, "to be responsible for payment of all wages, salaries, and benefits to" Tranforce personnel
assigned to NYK, and "to direct and control [Transforce] personnel in all matters including
hiring, termination, and discipline." *Id.* at 1.

    In February 2009, NYK was in a contractual relationship with Defendant Mars Petcare.
In accordance with that contract, NYK provided to Mars Petcare "spotting and shuttle services,"
*i.e.*, moving semi tractor-trailers around the warehouse yard, at the Mars Petcare facility located
in Columbus, Ohio.  (Mars Petcare Rep. Melissa Muth Dep. at 34; Doc. No. 49 at 12.)  NYK
employed a Drop Lot Coordinator whom it assigned to the Mars Petcare location.  The Drop Lot
Coordinator would be informed by a Mars Petcare dispatcher when a semi tractor-trailer was full
and the Coordinator then dispatched direction to the NYK and/or Transforce yard truck operators
to move that trailer.

    On February 12, 2009, pursuant to the contract between Transforce and NYK and the
contract between NYK and Mars Petcare, Mr. Harding and another Transforce employee,
Defendant Paul E. Lay, were working at the Columbus Mars Petcare facility as yard truck
operators.  Mr. Harding had completed his work shift and was walking across the yard to his
personal vehicle when he was struck and killed by the yard truck driven by Mr. Lay.  The
Occupational Safety and Health Administration ("OSHA") issued citations to NYK for its failure
to ensure that each powered industrial truck operator was competent to operate such a truck

2

safely.

On February 11, 2011, Plaintiff filed the instant action in the Franklin County, Ohio Court of Common Pleas. Plaintiff named as defendants Transforce, Mr. Lay, Kal Kan Foods, Inc., Mars Petcare and NYK. On March 18, 2011, Defendants jointly removed the action to this Court based upon diversity jurisdiction.

On April 11, 2011, Mr. Lay moved for dismissal of the claims filed against him (Doc. No. 10), which this Court granted (Doc. No. 35). Plaintiff stipulated to the dismissal of Transforce (Doc. No. 40) and to the dismissal of Mars Petcare and Kal Kan Foods, Inc. (Doc. No. 58). The only defendant remaining is NYK and the claims against it are negligence, negligent hiring, training, and/or supervision and business invitee liability.

NYK has moved for summary judgment (Doc. No. 42) and Plaintiff has moved for partial summary judgment (Doc. No. 53). Both of those motions are ripe for review. (Docs. No. 51, 52, 60, 61.)

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby, 477 U.S.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

### III.

NYK moves for summary judgment, arguing that pursuant to the loaned servant doctrine Mr. Harding was an employee of NYK on the date of the accident that caused his death, and NYK is therefore immune from this suit under Ohio's Workers' Compensation Act. Plaintiff requests summary judgment on the issue of Defendant Mars Petcare's liability to prevent "NYK from attempting to place fault on Mars at trial." (Doc. No. 53 at 2.)

### A. NYK's Motion for Summary Judgment

"Generally, employers who either pay their workers' compensation premiums or are self-insuring are not 'liable to respond in damages at common law or by statute for any injury . . . received or contracted by any employee in the course of or arising out of his employment . . . .'" *Stinnett v. Halcore Group, Inc.*, 165 Ohio App. 3d 464, 468 (Ohio 10th Dist. 2006) (citing Ohio Rev. Code § 4123.74). "However, for the purposes of workers' compensation immunity an employee may have dual employment status." *Below v. Dollar General Corp.*, 163 Ohio App. 3d 694, 699 (Ohio 3d Dist. 2005). "If an employer 'lends' its employee to a customer, and that customer 'controls the manner or means of performing the [employee's] work,' then that employee is an employee of the customer within the meaning of the Workers' Compensation Act and, thus, the customer cannot be liable for any injury the employee receives in the course of or arising out of his work for the customer." *Stinnett*, 165 Ohio App. 3d at 468 (citing *Daniels v.*

4

*MacGregor Co.*, 2 Ohio St.2d 89 (Ohio 1965)).

Thus, the issue before this Court is whether Mr. Harding was an employee of NYK at the time of the accident that caused his death for the purposes of workers' compensation immunity. "The question of whether a person is an employee for the purposes of workers' compensation immunity turns upon the key factual determination of who had the right to control the manner or means of the person's work." *Below*, 163 Ohio App. 3d at 699 (citing *Bostic v. Connor*, 37 Ohio St.3d 144, para. one of syllabus (Ohio 1988)). "In the absence of such evidence in the customer's favor, 'there is an inference that the actor remains in his general employment . . . .'" *Stinnett*, 165 Ohio App. 3d at 468 (quoting 1 Restatement of the Law 2d, Agency (1958) 501, Section 227, Comment b).

"To determine the factual issue of who had the right to control the manner or means of doing the work the Ohio Supreme Court has enumerated several factors, which must be considered." *Below*, 163 Ohio App. 3d at 701 (citing *Bostic*, 37 Ohio St.3d at para. one of syllabus). "These factors include, but are not limited to, who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools, and personnel used; who selects the routes; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts." *Id.* (citing *Bostic*, *supra*, at 146).

Before the Court is a significant amount of uncontroverted evidence upon which each party relies. As it must, the Court considers this evidence in the light most favorable to Plaintiff.

Looking to the uncontroverted evidence that weighs in favor of Plaintiff's position that Mr. Harding was not an employee of NYK is the contract between Transforce and NYK, which dictates that Transforce was to "direct and control [Mr. Harding] in all matters" of his work with

5

NYK and that his "status" was that he was an "employee of" Transforce and Transforce and

NYK were independent contractors.  NYK  provided to OSHA a list of the employees that

worked the day of the accident and listed Mr. Harding and Mr. Lay as "Transforce" employees

and reported during the OSHA investigation that Mr. Harding was a "temporary worker."  (Doc.

No. 52-11, 52-13.)  Mr. Harding was considered an employee of Transforce for tax purposes and

Transforce paid his workers' compensation premiums and all benefits.  NYK neither trained Mr.

Harding on how to operate a yard truck nor trained him on specific safety rules in the same way

that it did its regular employees.  Transforce established and paid Mr. Harding's wages.

Also, any concerns Mr. Harding may have had about safety, training and/or work

schedule were directed to Transforce.  Any concerns NYK had about Mr. Harding were directed

to Transforce, including all quality of work issues, discipline and/or performance.  Transforce

provided the safety vest for Mr. Harding.  Transforce scheduled Mr. Harding to work for NYK

and NYK could not assign any task to Mr. Harding except for the contracted task of operating a

yard truck.  The NYK Drop Lot Coordinator was inside a building at Mars Petcare and did not

have a view of the entire yard in which Mr. Harding's work was performed.

The uncontroverted evidence before the Court that supports NYK's position that Mr.

Harding was its employee is that the yard trucks were owned by NYK and it was NYK's Drop

Lot Coordinator who radio dispatched Mr. Harding with information on which semi tractor-

trailer needed to be moved.  NYK reviewed and gave approval of the employees chosen by

Transforce before Transforce could schedule the employee to work for NYK.  There was no

Transforce supervisor at the Mars Petcare job location.

The evidence regarding whether Mr. Harding was an employee of NYK is also, in some

respects, controverted. Both parties submit affidavits specifically stating that NYK either did or did not control the mode, manner and means of Transforce employees' work. *Compare* (NYK Yard Truck Operator Morris Henson Aff. ¶ 45; Doc. No. 52-6) ("The [Drop Lot Coordinator] was not in charge of controlling the mode, manner and means of how Mr. Harding, Mr. Lay or other Transforce employees performed their services. They were treated as independent contractors.") *with* (Aff. of NYK Transport Manager Matt Burkey Aff. ¶ 14; Doc. No. 42-1) ("[NYK] controlled the mode, manner and means of work performed by Mr. Harding and Mr. Lay. The [Drop Lot Coordinator] was the on-site manager for [NYK].") Further, while NYK offers testimony that it was its Drop Lot Coordinator who controlled Mr. Lay's actions at the Mars Petcare facility, Plaintiff offers the testimony of a Drop Lot Coordinator who claims that he was not able to control Mr. Lay or any Transforce employee. Sean Koeth was employed by NYK as a Drop Lot Coordinator on February 12, 2009, but was not on duty at the time of Mr. Harding's accident. He avers:

> As a [Drop Lot Coordinator] for NYK, I was the direct boss of the NYK yard truck operators. I never considered myself the boss of the Transforce employees. I did not have the authority or ability to reprimand the Transforce employees.

(Koeth Aff. ¶ 17; Doc. No. 52-9.) There are other contradictions in the evidence before the Court too. *Compare* (NYK Yard Truck Operator Jim Standall Aff. ¶ 13; Doc. No. 52-7) ("Transforce assigned Mr. Harding and Mr. Lay to work at the Mars Petcare Facility.") *with* (NYK Transport Manager Matt Burkey Aff. ¶ 9; Doc. No. 42-1) ("I [on behalf of NYK] would then assign the employee to the location where he/she was needed.").

Plaintiff contends that the evidence shows that NYK's authority over Mr. Harding was limited to informing him of the location of the work to be done, that NYK was only interested in

the end result of the work, and therefore, the loaned servant doctrine does not apply.  Plaintiff

relies on *Stinnett v. Halcore Group, Inc.*, in which an Ohio appellate court explained:

> The loaned servant doctrine does not apply if the customer is only interested in the
> end result of the services, as opposed to the method selected by the employee to
> attain that result. *Ferguson v. Dyer*, 149 Ohio App. 3d 380, 2002 Ohio 1442, at P20.
> Similarly, if the customer's authority over the employee is limited to showing him
> the location of the work to be done, and does not include directing the employee on
> how to do the work, the employee is not under the control of the customer. *Giovinale
> v. Republic Steel Corp.* (1949), 151 Ohio St. 161, paragraph three of the syllabus.
> *See, also, Gilmore v. Grandview Cement Products, Inc.* (1962), 116 Ohio App. 313,
> 316-318; *Redmond v. Republic Steel Corp.* (1956), 102 Ohio App. 163, 170-172.
> Accordingly, "[m]ere directions as to where to load and deliver are not sufficient to
> create a question of fact as to control." *Cincinnati Ins. Co. v. Continental Cas. Co.*
> (Dec. 6, 1995), Hamilton App. No. C-940884, 1995 Ohio App. LEXIS 5325, citing
> *Hamlin v. McAlpin Co.* (1964), 175 Ohio St. 517, paragraph three of the syllabus.

165 Ohio App. 3d at 469–70 (parallel citations omitted).

Plaintiff further supports her assessment with the deposition testimony of a Mars Petcare

representative, Melissa Muth, who testified that the Drop Lot Coordinator did not direct the yard

truck operator regarding the details or quality of his or her work.  Specifically, Ms. Muth testified

that when a trailer needed to be moved, the Drop Lot Coordinator would dispatch that

information to the yard truck operators who would "pull [the trailer] away from the door and

either give it to a shuttle driver or put it in the yard somewhere."  (Muth Dep. at 38; Doc. No.

49.)

Plaintiff also relies upon, *inter alia*, the affidavit of Theodore D. Fuller, Jr., a yard truck

driver who averred that:

> The [Drop Lot Coordinator]'s instructions to the Transforce temporary workers was
> limited to giving them dispatch orders.  The [Drop Lot Coordinator] was not there
> to watch the drivers in the drop lot or to ensure that the drivers were operating the
> trucks safely or to tell them how to move the trailers.  There was no one present at
> the drop lot around the time of the accident to control the details or quality of work.
> The [Drop Lot Coordinator] simply wanted "Trailer A moved to Lot B."  It was a

8

result oriented job.

(Fuller Aff. ¶¶ 39, 40; Doc. No. 52-8); *see also* (Standall Aff. ¶ 9; Doc. No. 52-7) ("The

DLC's/dispatcher's duty was to tell the yard truck operators which trailer to move from door to

door. It was not to oversee and supervise how the trailers were moved or to enforce the safety

rules.").

Most persuasive, however, is Plaintiff's reliance upon Mr. Lay's handwritten assessment

of the accident as evidence that NYK was only interested in the end result of his work. A few

hours after the accident that took Mr. Harding's life, Mr. Lay wrote:

> Received trailer numbers that I was supposed to move. I was going to back under the
> trailer and one of the other drivers two wayed me to move trailers around. I couldn't
> understand what he said so I went around to see what he said. He said you couldn't
> leave one container in front of the other. He said he'd hook one, I'd take the other.
> I had to move a couple of trailers around front before moving these two. When I got
> around front I aligned the truck like I normally do and felt/heard a thump/thump.
> When I looked I saw Mark laying on the ground. . . .

(Doc. No. 52-10.) Viewing this assessment in the light most favorable to Plaintiff, it appears that

Mr. Lay made independent decisions on how, when and where to move trailers so that he could

accomplish the dispatched order to move another particular trailer.

As to the cases upon which NYK relies to support its position, they do set forth instances

in which courts found as a matter of law that the employee was a dual employee, shielding the

customer from negligence claims. Those cases, like the one *sub judice*, are exceptionally fact

bound. And, there are important facts in those cases that distinguish them from the present

action. For example, unlike NYK, the contractor-customer in *Medina v. Harold J. Becker

Company* was responsible for safety training and for providing its safety plans to the original

employer. 163 Ohio App. 3d 832 (Ohio App. 1st Dist. 2005) ("Becker acknowledges that it was

9

responsible for providing a general fall-protection plan to the general contractor, Oberle, and that it provided classroom roofing-safety training to Medina."). Likewise, in *Cottrill v. Thermo Electron North America, LLC,* the customer both trained the employee in her job duties and assigned her to perform the particular task that injured her and the original employer in no way controlled what tasks the employee would be expected to undertake at the customer's facility. No. 09CA34, 2010 Ohio App. LEXIS 1833 (Ohio App. 4th Dist. 2010). Here, however, NYK did not provide full training to Mr. Harding and Tranforce did have control over what tasks Mr. Harding would be expected to undertake at the NYK/Mars Petcare facility.

Plaintiff relies upon *Below v. Dollar General*, a case that the Court finds more helpful. 163 Ohio App. 3d 694. In *Below*, an Ohio appellate court reversed the trial court's grant of summary judgment in favor of Dollar General on the issue of whether a worker was its employee under the loaned servant doctrine. In that case, a truck driver was hired by a company to haul Dollar General merchandise exclusively. The driver was injured while unloading Dollar General's merchandise, and he was unable to work thereafter. The driver's medical expenses were paid through the original employer's workers' compensation policy. The driver, however, filed suit against Dollar General and some of its employees, alleging negligence in the loading of the trailers, which proximately caused his injuries. On appeal, the court found that a genuine issue of material fact existed as to whether Dollar General controlled the driver's day-to-day employment. Before the court was conflicting evidence on the control issue and there was also uncontroverted evidence showing that both the company and Dollar General controlled various aspects of the injured worker's job. The *Below* court concluded:

> Upon review of the materials filed by both parties, we find that Appellants have raised a genuine issue of fact as to whether Dollar General had the right to control the

10

manner or means of Robert's day-to-day employment. . . . Appellants provided specific evidence that [the original employer] U.S.X. provided its drivers with the trucks, maintained control of scheduling, maintained control of dispatching and contact with its driver, provided its drivers with route information, provided payment to its drivers and paid for all workers' compensation and unemployment payments. Additionally, the transportation delivery agreement states that U.S.X. maintains exclusive control over its employees.

Thus, we are satisfied that Appellants, as the nonmoving party, have raised specific facts showing that there is a genuine issue of material fact. *See Mack v. Continental Express Div. ANR Freight* (Dec. 22, 1994), 3d Dist.No. 13-94-23, 1994 Ohio App. LEXIS 6088. In other words, upon review of the record below, we find that there exists a genuine issue of material fact as to who had the right to control the manner or means of Robert's day-to-day employment, which must be litigated.

*Id.* at 701–02.

The circumstances in the instant action are similar to those in *Below* in that NYK and

Transforce each controlled various aspects of Mr. Harding's job and there is also conflicting

evidence on some of the aspects of that issue. Consequently, as did the court in *Below*, this

Court concludes that genuine issues of material fact exist as to whether NYK controlled Mr.

Harding's day-to-day employment or whether NYK was merely interested in the end result of

Mr. Harding's work. Accordingly, the Court **DENIES** NYK's Motion for Summary Judgment.

### B. Plaintiff's Motion for Summary Judgment

In her motion for summary judgment, Plaintiff requests "this court to hold that Mars was

not liable for Mr. Harding's death and was not otherwise negligent . . . ." (Doc. No. 53 at 2.)

Plaintiff indicates that she moves for judgment as a matter of law on the issue of Mars Petcare's

liability to prevent "NYK from attempting to place fault on Mars at trial." *Id.*

In opposition, NYK argues that "Rule 56(a) only allows Plaintiff to move for summary

judgment on 'each claim or defense,' *i.e.* elements of Plaintiff's claim or Complaint. Rule 56

makes no allowance for Plaintiff to select an element of a dismissed party's potential defense and

11

move for summary judgment upon it." (Doc. No. 60 at 2) (citing Fed. R. Civ. P. 56(a) and *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (litigant "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"). Plaintiff does not reply to this argument, which the Court finds well-taken.

Plaintiff cannot move for summary judgment on behalf of an element in a claim that was brought against a defendant who has been dismissed from this action. Accordingly, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment.

**IV.**

For the reasons set forth above, the Court **DENIES** NYK's Motion for Summary Judgment (Doc. No. 42) and **DENIES** Plaintiff's Motion for Partial Summary Judgment (Doc. No. 53).

   **IT IS SO ORDERED.**

3-16-2013
_____
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

12
